607 P.2d 1351 (1980)
NEVADA PUBLIC EMPLOYEES RETIREMENT BOARD, Appellant,
v.
William BYRNE, Respondent.
No. 12001.
Supreme Court of Nevada.
March 13, 1980.
Richard H. Bryan, Atty. Gen., and William E. Isaeff, Deputy Atty. Gen., Carson City, for appellant.
Thomas F. Pitaro, Las Vegas, for respondent.

OPINION
MOWBRAY, Chief Justice:
The Nevada Public Employees Retirement Board appeals from the judgment of the district court, entered after trial to the court on an agreed statement of facts, ordering the Board to pay retirement benefits to William Byrne in accordance with the Board's earlier representations as to the amounts of those benefits. Since the trial court properly found the Board to be equitably *1352 estopped from denying its earlier representations, we affirm.[1]
Between January, 1955 and October, 1975, Byrne dutifully served the state and the public, as an elected official for approximately 12.5 years and as a regular civil servant for approximately 7.55 years. In order to prepare for his retirement, Byrne inquired of the Board, at some time prior to December, 1971, as to the amount of his prospective retirement benefits. The Board responded that Byrne's benefits would be calculated at the rate of 2.5% of his average monthly compensation for each year of service up to 20 years of service, and that his average monthly compensation would be the average of his 36 highest salaried, consecutive months within his last 10 years of service. Byrne was further informed that as of October 8, 1971, he had 15 years, 11 months, and 24 days of accrued, covered service.
The parties continued their correspondence concerning Byrne's retirement over the next four years. In March, 1972, the Board informed Byrne that he had accrued 16.25 years of covered service and would qualify for an unmodified monthly retirement allowance of $504.49. In October, 1973, the Board explained to Byrne that these figures were being provided to "enable you to plan your future retirement." In December, 1974, the Board advised Byrne that his unmodified monthly allowance, as of January 1, 1975, would be $725.35. The Board later informed Byrne that he would complete 20 years of covered service on October 24, 1974.
In reliance on the Board's representations concerning his retirement benefits, Byrne notified the Board that he would retire on October 24, 1975; and, on September 1, 1975, Byrne submitted his formal, written resignation, effective October 24, 1975, from his $23,000.00 per annum position as Assistant Clark County Assessor. Byrne further relied on the Board's calculations by selling his Las Vegas home for $28,000.00 and by purchasing a retirement home in Irvine, California, for $54,806.00, thereby obligating himself to make monthly payments of $315.00 plus taxes.
Subsequent to these transactions, however, the Board informed Byrne that his monthly retirement benefits would amount to a mere $86.78.[2] Byrne protested this *1353 calculation. On January 28, 1976, after referring the matter to the Attorney General for his opinion, the Board reevaluated its position and computed Byrne's unmodified, monthly benefits as $468.06.[3] Byrne's subsequent protests went unheeded.
Byrne then filed this suit in the district court, seeking to estop the Board from denying its earlier representations as to the amount and mode of calculation of his retirement benefits. After a trial to the court on an agreed statement of facts, the district court found that the Board's statements as to Byrne's prospective pension benefits were factual in nature, rather than estimates or opinions, and that Byrne's reliance on those representations was both detrimental and reasonable; accordingly, the court raised an estoppel against the Board and ordered it to pay retirement benefits to Byrne in accordance with its earlier statements. This appeal followed.
The Board contends that Byrne could not, as a matter of law, reasonably rely on the Board's representations because (1) those representations were mere estimates and opinions, and (2) the Board's inherent power to correct its mistakes[4] bars any reliance on its representations. We cannot agree.
The doctrine of equitable estoppel, as applied to governmental agencies, is rooted in concepts of justice and right, and is premised on the idea that the sovereign is responsible: a citizen has a legitimate expectation that the government should deal fairly with him or her. 2 K. Davis, Administrative Law Treatise § 17.01 (West 1958); see also Mesaba Aviation Div. v. County of Itasca, 258 N.W.2d 877 (Minn. 1977); National Advertising Co. v. State, etc., 91 N.M. 191, 571 P.2d 1194 (1977); Yamada v. Natural Disaster Claims Comm'n., 54 Haw. 621, 513 P.2d 1001 (1973); City of Long Beach v. Mansell, 3 Cal.3d 462, 91 Cal. Rptr. 23, 476 P.2d 423 (1970). Moreover, a governmental body, charged with as important a function as the administration of a public employees retirement system, bears a most stringent duty to abstain from giving inaccurate or misleading advice. Crumpler v. Board of Administration Emp. Retire. Sys., 32 Cal. App.3d 567, 108 Cal. Rptr. 293, 304 (1973).
Viewed from this perspective, we cannot say that the district court's finding that the Board's representations concerning Byrne's retirement benefits were not estimates nor opinions is not supported by substantial evidence. On the contrary, the record demonstrates that the retirement figures communicated by the Board to Byrne were calculated to the penny and to the day, and were expressly given to Byrne to "enable [him] to plan [his] future retirement."
In addition, we fail to see how the Board's power to correct "an error or inequity" prohibits a public employee, such as respondent, from relying on these types of factual statements, or prevents the courts of this state from raising an estoppel against it. We would turn the doctrine of equitable estoppel upon its head if we were to hold that the power to correct an inequity as unjust as the one here, would, without *1354 more, defeat our courts' inherent power to seek and to do equity. See generally, Crumpler v. Board of Administration Emp. Retire. Sys., supra.
Perceiving no error, we affirm the judgment of the district court.
THOMPSON, GUNDERSON, MANOUKIAN and BATJER, JJ., concur.
NOTES
[1] Because of our disposition here, we need not discuss nor determine the propriety of the alternative reasons given by the district court for its ruling.
[2] In reaching this figure, the Board apparently relied on the 1975 versions of NRS 286.470 & 286.475; but, for some unexplained reason, it disregarded any salaries earned by Byrne as a county civil servant. Those statutes, in their 1975 form, provided in pertinent part:

"286.470 Credit for service as county commissioner, city councilman, mayor: Procedure.
"1. Service as a commissioner of a county participating in the system, or as a councilman or mayor of an incorporated city participating in the system, shall be service to be credited for retirement under this chapter and service credit shall be granted for the entire tenure of office upon the following conditions:
(a) The average monthly salary of a member applying for retirement, including, as any part of his total service, service in the foregoing capacities, shall be calculated upon the monthly average of all sums earned in covered employment throughout the total service of the individual. When service in any of the foregoing capacities shall be in excess of 3 consecutive years, the monthly average salary for the entire service in such capacity shall be deemed to be the average salary received in the 3 highest salaried consecutive years.
.....
"3. Members of the system who have served in the foregoing capacities and who have reached retirement age may waive service in such capacities, at their election, at the time of retirement and elect to have their allowances computed in the same manner as those of other members of the system and under the same provisions as are applicable to other members of the system.
"4. The provisions of this chapter and the rules and regulations of the board, when not contradictory to the provisions of this section, shall apply equally to persons in the foregoing capacities."
"286.475 Credit for service as legislator prior to July 1, 1967: Calculation of average monthly salary. The method of calculating the average monthly salary of a county commissioner or a councilman of an incorporated city prescribed in paragraph (a) of subsection 1 of NRS 286.470 shall be used in calculating the average monthly salary of persons serving as legislators prior to July 1, 1967, where such service has remained accredited under the provisions of this chapter."
[3] This "compromise" figure is apparently based on a pro rata application of NRS 286.551 and the 1975 version of NRS 286.470 to Byrne's elected service and regular civil service. In adopting this formula, the Board and the Attorney General used NRS 286.367 as their model, in which the legislature specifically provided for a pro rata retirement scheme for those individuals with combined service as volunteer and regular firefighters.
[4] In 1975, NRS 286.190(3) provided, in pertinent part, that the Board "[m]ay:

"(a) Adjust service and make any correction of member, retiree or beneficiary records and benefits after an error or inequity has been determined."