WASHOE COUNTY, NEVADA: BILL FARR, BENNIE FERRARI, JAMES UNDERWOOD, STEVE BROWN AND BELIE WILLIAMS, INDIVIDUALLY AND AS COUNTY COMMISSIONERS OF WASHOE COUNTY, NEVADA, APPELLANTS, *v.* MARK WITTENBERG AND ST. MARY'S HOSPITAL, RESPONDENTS.

No. 14802

February 24, 1984                    676 P.2d 808

*Mills Lane,* District Attorney, *William A. Baker,* Deputy District Attorney, Washoe County, for Appellants.

*Echeverria and Osborne,* Reno, for Respondents.

*Bill Curran,* Legal Counsel to Nevada Association of Counties, for Amicus Curiae.

## OPINION

By the Court, SPRINGER, J.:

The question in this case is whether Washoe County is obligated to pay for emergency medical treatment provided by St. Mary's Hospital to indigent patients eligible for county medical assistance. We hold that St. Mary's Hospital and other private health care providers are entitled to be reimbursed for the costs of treatment for eligible indigent patients in medical emergencies as narrowly defined here.

Respondent Wittenberg is eligible to receive medical care at the expense of Washoe County. He was admitted to the emergency room of St. Mary's Hospital because of a "dire emergency." He had a fever, his abdomen was swollen, and he was delirious. Unopposed evidence was presented that the cost of services rendered to Wittenberg was $12,491.87. The district court entered judgment in his favor for this amount, together with interest.

Washoe County takes the firm stand that it has no obligation under any circumstances to pay for medical care rendered in the county unless it is rendered at Washoe Medical Center or is performed with the county's consent. We disagree with this position and hold that the county is responsible for payment for emergency medical care where the condition threatens life or serious and permanent bodily impairment to the patient and

the need for care is manifestly urgent and cannot await transfer of the patient to Washoe Medical Center.

This rule is intended to be narrow in scope and applies only to eligible medical indigents who reside in the county. NRS 428.010(1)[1] requires the county to provide care to the poor, indigent, incompetent, and incapacitated residents of the county. The county recognizes this obligation but maintains that its duty to provide care is limited to care offered at Washoe Medical Center.

The defect in the county's position is that there are, of necessity, cases in which needed medical care cannot be safely or reasonably provided at Washoe Medical Center. For example, if an eligible medical indigent were injured in a remote area of the county and were rushed to the nearest first-aid station for life-saving emergency treatment, it would be unreasonable for the county to deny responsibility for the care of such a patient. Two factors intersect here: the duty of the county to provide medical services and a compelling medical emergency making it improvident to require transportation of the indigent patient to Washoe Medical Center for the necessary treatment. If there is a duty to provide care, and it cannot under the circumstances be reasonably provided at Washoe Medical Center, it must be provided elsewhere; and the county must pay for it. Although there is a conflict of authority, the clear majority of courts have held that under such circumstances a county must make reimbursements.[2]

---

[1]NRS 428.010(1) provides:

1.  To the extent that moneys may be lawfully appropriated by the board of county commissioners for this purpose pursuant to NRS 428.050, every county shall provide care, support and relief to the poor, indigent, incompetent and those incapacitated by age, disease or accident, lawfully resident therein, when such persons are not supported or relieved by their relatives or guardians, by their own means, or by state hospitals, or other state, federal or private institutions or agencies.

[2]Wayne Township v. Lutheran Hospital, 312 N.E.2d 120 (Ind.Ct.App. 1974); County Dept. of Pub. Welf. v. Trustees of Indiana U., 251 N.E.2d 456 (Ind.Ct.App. 1969); Massachusetts General Hospital v. City of Revere, 191 N.E.2d 120 (Mass. 1963); Amsterdam City Hospital v. Gemmiti, 213 N.Y.S.2d 955 (1961); Rockford Memorial Hospital Association v. Whaples, 165 N.E.2d 523 (Ill.Ct.App. 1960); Board of Com'rs of Nobel County v. Niemann, 78 P.2d 672 (Okla. 1938); Cache Valley General Hospital v. Cache County, 67 P.2d 639 (Utah 1937); Burnham v. Lincoln County, 257 N.W. 491 (Neb. 1934); Sweet Clinic v. Lewis County, 282 Pac. 832 (Wash. 1929); Board of Com'rs v. Enid Springs Sanitarium & Hospital, 244 Pac. 426 (Okla. 1926); Newcomer v. Jefferson Tp., Tipto County, 103 N.E. 843 (Ind. 1914); *see also* 79 Am.Jur.2d *Welfare Laws* §§ 88, 90 (1975); 70 C.J.S. *Paupers* § 74(a)(4) 162-64 (1951); Annotation 93 A.L.R. 900 (1934).

Washoe County Code, section 45.170, provides that necessary medical care must be provided at the Washoe Medical Center and that it may be rendered elsewhere only upon approval of the welfare department. It is certainly reasonable for the county to fulfill its statutory duty to provide care by creating and maintaining its own medical facility. It is also reasonable that it should require its medically indigent to be treated at its own facility. It is proper to require those eligible for care to go to the county medical center and not to shop around for private care and expect to send the bill to the county. Nevertheless, the county may not be allowed to deny responsibility for care necessarily administered to eligible persons to whom the medical center is not safely accessible. Thus, the county is, under certain emergency conditions, responsible for the cost of care provided to eligible persons outside of the medical center, and such care should be approved by the county welfare department as stated in section 45.170 of the county code.

Persons who provide urgent emergency care to eligible indigents have a claim against the county for the reasonable value of medical services provided to eligible medical indigents provided that:

1. There exists an urgent medical emergency in which serious and permanent bodily disability or death is likely to result if the patient is transported to the county hospital;

2. The duration of treatment is limited to the time during which the emergency treatment is being given and ends at such time as the person treated can safely and prudently be transported to the county hospital;

3. The county welfare department is notified as soon as is reasonably possible after the patient has been admitted for emergency treatment, allowing the county an opportunity to determine the patient's eligibility for county medical assistance; and

4. The expenses incurred in the treatment and care of the patient are reasonable in light of the patient's required needs.

Under such circumstances county welfare would be acting improperly and arbitrarily if it were to refuse such a claim; the county would be legally obligated to pay it.

Under the stated rule the county is obviously not obligated to

pay for medical services rendered merely because a medically indigent person has obtained admission to the emergency room of St. Mary's or any other private health care institution. We agree with the county that an emergency room does not an emergency make; and mere admission to an emergency room for treatment does not fulfill the requirements of the rule here stated.

In the Wittenberg case the district court made an express finding that Wittenberg's recovery was based on the emergency care provided to him by St. Mary's Hospital. There is ample evidence in the record to support a finding that the emergency care falls within the definition stated above. The amount and reasonableness of the award was not contested by the county before the trial court. The Wittenberg judgment is affirmed.

In addition to the Wittenberg award, the district court gave judgment to St. Mary's in the sum of $319,594.78, to compensate St. Mary's for the cost of medical services provided to other eligible medical indigents given emergency medical care from December 22, 1981, through February 2, 1983. There is proof in the record to support a finding that all of the patients for whom compensation is claimed by St. Mary's are medical indigents eligible for county medical assistance. There is evidence that all received "emergency treatment."

As stated above, Washoe County took the position that no care, emergency or otherwise, could become a county obligation unless preauthorized or provided at the medical center. Consequently the county did not contest the emergency nature of each patient or the reasonableness of the duration and cost of treatment. St. Mary's testimony and exhibits relating to these factors were received without objection by the county. Under these circumstances we will not set aside the judgment.

Affirmed.

MANOUKIAN, C. J., AND MOWBRAY, STEFFEN, and GUNDERSON, JJ., concur.