SOUTHERN NEVADA MEMORIAL HOSPITAL, SPRING VALLEY COMMUNITY HOSPITAL AND HUMANA INC. DBA SUBURBAN HOSPITAL MEDICAL CENTER, APPELLANTS AND CROSS-RESPONDENTS, v. STATE OF NEVADA, DEPARTMENT OF HUMAN RESOURCES; AND E. WILLIAMS HANMER, IN HIS CAPACITY AS HEARING OFFICER, S. BARTON JACKA; JAMES SALO AND WILLIAM BIBLE, RESPONDENTS AND CROSS-APPELLANTS.

No. 15627

August 27, 1985 705 P.2d 139

*Robert J. Miller,* District Attorney, *Bill Curran,* County Counsel, *Johnnie B. Rawlinson,* Deputy District Attorney, Las Vegas, for Appellant Southern Nevada Memorial Hospital.

*I. R. Ashleman,* Las Vegas, for Appellant Spring Valley Community Hospital.

*Lionel Sawyer & Collins* and *Dennis L. Kennedy,* Las Vegas, for Appellant Humana Inc. dba Suburban Hospital Medical Center.

*Brian McKay,* Attorney General, and *Bryan M. Nelson,* Deputy Attorney General, Carson City, for Respondents.

## OPINION

*Per Curiam:*

This appeal and cross-appeal resulted from the district court's review of administrative proceedings which, in the first instance, culminated in the issuance of certificates of need to appellants Southern Nevada Memorial Hospital (Southern Nevada) and Spring Valley Community Hospital (Spring Valley) authorizing the former to increase its bed capacity and the latter to construct and operate an acute-care hospital. Subsequently, the aforementioned certificates were rescinded and all applications seeking certificates of need were rejected. After reviewing the somewhat convoluted history of the administrative proceedings, the district court remanded the entire matter to the Department of Human Resources (Department) to enter findings of fact and conclusions of law supporting the initial action of the Department. Having determined that the lower court erred, reversal and remand are necessary.

On September 12, 1980, Southern Nevada filed an application with the Department seeking permission to expand its existing facility by the addition of 65 medical-surgical beds. Spring Valley sought approval to construct and operate a 160 bed acute-care hospital in the area south of Tropicana Avenue in the Spring

Valley area. These applications for a certificate of need (CON) were filed according to the requirements of NRS 439A and the regulations adopted pursuant thereto.[1]

The above applications were consolidated for hearing by the Department together with similar applications filed by Humana Inc. (Humana), Community Hospital, Valley Hospital, Physicians Hospital (Physicians) and Union Medical Center (Union Med.). On March 9, 1981, Dr. Ralph DiSibio (DiSibio), then Director of the Department, followed staff recommendations and issued decisions approving the Spring Valley and Southern Nevada applications and denying the remainder of the applications.[2]

DiSibio's CON letter approved Southern Nevada's application on the express condition that the hospital comply with the timetables set forth in its application. Hence, Southern Nevada had 90 days from the date of receiving approval to complete the renovation and construction.

Approximately a month later, the majority of applicants which had received denials of their applications filed notices of appeal pursuant to NRS 439A.105. Neither Southern Nevada nor Spring Valley were named as a party to any of the appeals or served with notice of the appeals. Southern Nevada first received notification of the appeals by telephone from the Department on April 21, 1981. Eventually, on May 11, 1981, Southern Nevada received copies of the appeals from the Department.

Subsequent to the filing of the appeals, the Department did not stay, withdraw or modify either the letter of approval issued to Southern Nevada or the 90-day completion deadline. This is so even though one appeal specifically requested that the letter be withdrawn pending the appeal.

Spring Valley and Southern Nevada intervened in the appeal. James Salo (Salo) was appointed as the Hearing Officer. A hearing was conducted on July 8, 1981, and on July 17, 1981, Salo issued his decision vacating all of DiSibio's decisions and remanding them back to the Director of the Department to prepare findings of fact and conclusions of law in accordance with NRS 233B.125.[3]

---

[1]Under NRS 439A.100, no person may construct or operate a hospital, or add a specified number of beds to an existing hospital, without having first received the approval of the Department. This approval is known as a Certificate of Need.

[2]Ordinarily, an application would be reviewed by a Health Systems Agency (HSA) and its recommendation would be given to the Director of the Department. In this case, due to recent legislative changes, no HSA had been designated. Therefore, the Department's staff handled the review process.

[3]While DiSibio's decision did not elaborate as to the underlying basis for his decision as required by NRS 233B.125, the Department's staff recommendations did contain an in-depth analysis.

Thereafter, A. R. Martelle (Martelle), DiSibio's successor, undertook reconsideration of the remanded applications in their entirety and on November 16, 1981, entered decisions denying all applications.

On August 27, 1982, E. Williams Hanmer (Hanmer) conducted a hearing on the administrative appeals of Southern Nevada, Spring Valley, Humana, Physicians and Union Med. Southern Nevada argued that the Department should be estopped from changing its position after Southern Nevada had acted in reliance upon it. On December 15, 1982, Hanmer affirmed Martelle's decision which denied all of the applications. Southern Nevada, Spring Valley and Humana thereafter sought judicial review.

After hearing the issues, the district court determined that DiSibio's initial decision was correct but that a remand to the Department was necessary for purposes of entering findings of fact and conclusions of law in support of the DiSibio decision. Our review of the record convinces us that Salo, Martelle and Hanmer abused their discretion in violation of NRS 233B.140(5)(f). We accordingly agree with the district court that the Department's first decision was appropriate and must be sustained. However, we are also persuaded that it was improper to remand the matter to the Department. For reasons hereafter specified, we therefore conclude that the CON letters of approval to Southern Nevada and Spring Valley must be reinstated.

While courts have traditionally held that a government could not be estopped while acting in a governmental capacity, the modern trend permits the application of equitable estoppel against a government to avoid manifest injustice and hardship to the injured party. *See, e.g.,* State v. Sponburgh, 401 P.2d 635 (Wash. 1965); United States v. Lazy FC Ranch, 481 F.2d 985 (9th Cir. 1973); Nevada Public Employees Retirement Board v. Byrne, 96 Nev. 276, 607 P.2d 1351 (1980).

In *Byrne, supra,* this Court, upon rejecting the State Board's argument that the claimant could not rely on certain benefit computations supplied him by the board, stated:

> The doctrine of equitable estoppel, as applied to governmental agencies, is rooted in concepts of justice and right, and is premised on the idea that the sovereign is responsible: a citizen has a legitimate expectation that the government should deal fairly with him or her. [Citations omitted.]

96 Nev. at 280.

Moreover, in *Sponburgh, supra,* 401 P.2d at 640, the court applied the doctrine of equitable estoppel to estop the state's

Liquor Control Board from reversing its decision approving the licensee's application for change of location after the licensee had spent large sums of money acquiring and remodeling the new location. The court concluded that:

> The doctrine of equitable estoppel is properly applicable in a case such as this, otherwise the whim of an administrative body could bankrupt an applicant who acted in good faith in reliance upon a solemn written commitment.
>
> . . . .
>
> The conduct of government should always be scrupulously just in dealing with its citizens; and where a public official, acting within his authority and with knowledge of the pertinent facts, has made a commitment and the party to whom it was made has acted to his detriment in reliance on that commitment, the official should not be permitted to revoke that commitment.

This Court recently held in Cheqer, Inc. v. Painters & Decorators, 98 Nev. 609, 655 P.2d 996 (1982), that equitable estoppel has been characterized as consisting of four elements:

> (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.

Whether these elements are present, thereby justifying application of the doctrine of equitable estoppel, depends upon the particular facts and circumstances of a given case. Based upon our review of the record, Southern Nevada was entitled to prevail under its theory of estoppel.

Inasmuch as the Department was the only agency permitted to approve or deny the applications, it certainly knew, after staff consideration and recommendation, whether the certificate of need should be issued to Southern Nevada.

The Department issued its letter of approval to Southern Nevada on March 9, 1981. The CON letter was of the type the Department was specifically authorized to issue and upon which it expected an applicant to take action. This document was the agency's express and official authorization to perform a specified act within a certain time; at the end of that time, the letter was no longer effective. Moreover, the letter was subject to withdrawal by the Department unless it determined that the applicant had made satisfactory progress in meeting the Department's timeta-

ble. Therefore, Southern Nevada immediately and justifiably commenced with diligence to complete the approved project.

The Department's regulations do provide for the modification of a timetable in a previously approved application for a CON or letter of approval.[4] In compliance with those regulations, the Department has the responsibility to determine whether reasons exist that justify staying or modifying a timetable in a previously issued letter of approval. Litigation has been expressly recognized by the Department as constituting sufficient reason to modify a timetable. In the instant case, the Department was specifically asked to stay the Southern Nevada letter of approval by one of the applicants, yet took no action.

The Department's inaction left Southern Nevada in the unfortunate position of choosing whether to adhere to the regulations and deadline, possibly to its detriment, or not to adhere to them, again possibly to its detriment. Since the Department had the right and responsibility to modify the timetable if need existed, Southern Nevada was entitled to believe that the Department intended that the project proceed in accordance with the specified date.

It is apparent that Southern Nevada was unaware of any facts tending to negate or qualify its reliance on the Department's CON authorization to proceed with the project of expansion. The Department had placed its imprimatur on Southern Nevada's application after due consideration and deliberation. At no time prior to the subsequent denial of all applications by DiSibio's successor did the Department direct Southern Nevada to discontinue the work prosecuted under the Department's CON authorization.

The final element of equitable estoppel is that of detrimental reliance. Southern Nevada acted in good faith and justifiably relied upon the Department's conduct. By so doing, Southern

---

[4]The regulations provide, in relevant part, as follows:

5.6 Modification of timetable.

5.6.1 Where the department has determined, after consultation with the applicant and the appropriate health systems agency, that good and sufficient reasons exist for a failure to meet the timetable, the department may modify it.

5.6.1.1 Good and sufficient reasons include delays incurred as the results of:
(a) Litigation;
(b) Actions of governing bodies and regulatory agencies, other than the department; and
(c) Other events deemed by the department to be beyond the control of the holder of the letter of approval.

5.6.2 The department will notify all affected except the public by mail when a timetable is modified or a letter of approval is withdrawn and will notify the general public by a notice in a newspaper of general circulation in the area involved.

Nevada expended over $173,000. The expenditure of such funds constitutes a detriment to Southern Nevada.

As noted above, the elements of equitable estoppel have been satisfied. While governmental subdivisions may be estopped from asserting a right or defense which it otherwise could have raised, courts are still concerned with the public policy aspects of estopping governmental agencies. The circumstances surrounding this case are of such a nature that this type of situation is unlikely to arise again.[5] Accordingly, such public policy considerations are not diminished by our ruling. *See* City of Imperial Beach v. Algert, 200 Cal.App. 48, 19 Cal.Rptr. 144 (1962); City of Long Beach v. Mansell, 476 P.2d 423 (Cal. 1970). Indeed, the invocation of equitable estoppel in the context of this case arguably enhances public policy. Southern Nevada is responsible for all resident indigent and emergency medical care in Clark County. By utilizing those beds that have been readied over four years ago, Southern Nevada will be able to recover some of the expenses already incurred. Moreover, if the beds remain useless, while additional beds are needed, then Southern Nevada would be required to divert indigent emergency care to private hospitals and reimburse them for their services at the expense of the Clark County taxpayers. Washoe County v. Wittenberg, 100 Nev. 143, 676 P.2d 808 (1984). Therefore, the Department should be estopped from vacating its previously issued CON letter of approval to Southern Nevada.

Moreover, the State of Nevada provided for both an appeal hearing and a reconsideration hearing as a means of assuring the propriety of the Department's decisions. Since the unsuccessful applicants sought relief from DiSibio's decision via an improper avenue, the Department was without jurisdiction to vacate the letters of approval awarded to Southern Nevada and Spring Valley.

Rule 6 of the Department's regulations provides that "*any person* may request a public hearing for good cause shown to have a reconsideration of the decision" following the Department's decision concerning the issuance or denial of a letter of approval (emphasis added). The above request must be made within 30 days of the agency's decision and the hearing is conducted by the Director of the Department. On the other hand, article 7.1.1 of the Department's regulations specifies that appeal hearings are only allowed to the applicant or the health system

---

[5]Notwithstanding Southern Nevada's expenditure, the Department's conduct and the extremely short renovation deadline, in August of 1982, the Department adopted a new regulation which automatically stays the effectiveness of any future letter of approval upon the filing of an appeal by any other applicant.

agency whose recommendation is overturned by the Director. This request for an appeal must be made within 30 days after the Department's decision. Appeals are heard before an appointed hearing officer.[6]

In light of the foregoing separate and distinct systems of review, it is clear that the unsuccessful applicants desiring revocation of the CON issued by DiSibio to Spring Valley and Southern Nevada, should have sought a reconsideration hearing. Instead, they proceeded by way of appeal. Of course, neither successful applicant appealed the granting of its letter of approval. A hearing officer has jurisdiction over parties that appeal. Accordingly, Salo had no jurisdiction to review the applications of Spring Valley and Southern Nevada. The fact that Spring Valley and Southern Nevada were allowed to intervene in the appeals almost three months after the issuance of their CON approvals did not confer upon the hearing officer subject matter jurisdiction concerning the CON letters. The 30-day jurisdictional period had long since expired. Administrative agencies cannot enlarge their own jurisdiction nor is subject matter jurisdiction conferred upon an agency by consent or failure to raise the agency's lack of jurisdiction. *See* Andrews v. Nev. St. Bd. of Cosmetology, 86 Nev. 207, 467 P.2d 96 (1970); Jasper v. Jewkes, 50 Nev. 153, 254 P. 698 (1927); Britz v. Consolidated Casinos Corp., 87 Nev. 441, 488 P.2d 911 (1971). Therefore, in accordance with the above cited cases and NRS 233B.140(5)(f), the Department's decisions concerning the Spring Valley and Southern Nevada CON approvals are of no effect.

We have considered the remaining contentions of error raised by the parties and consider them to be without merit. Accordingly, we remand this matter to the district court to reinstate the letters of approval granted to Spring Valley and Southern Nevada and to enter judgment in accordance with this opinion.

---

[6]Nevada initially proposed regulations to the Department of Health and Human Services of the United States Government which provided for an independent hearing officer to hear both the reconsideration and appeal hearings. The federal government recognized and approved the different hearings, but required that the Department, and not an independent hearing officer, render the decision on the reconsideration hearings in order to comply with 42 CFR 123.407(a)(8)-(a)(10). The State of Nevada accordingly changed its original draft regulations in order to comply with the federal requirements.