540 P.2d 1244

**AMOS FLIGHT OPERATIONS, INC., an Arizona Corporation, Donald L. Amos and Howard W. Bollman, dba Zonic Air Freight Lines, Appellants,**

v.

**THUNDERBIRD BANK, Appellee.**
**No. 11710.**

Supreme Court of Arizona,
In Division.

Sept. 25, 1975.
Rehearing Denied Nov. 18, 1975.

Holman & Lewis by James R. Holman, Tempe, for appellants.

Jennings, Strouss & Salmon by Timothy W. Barton and M. Byron Lewis, Phoenix, for appellee.

CAMERON, Chief Justice.

This is an appeal from a judgment entered in favor of Thunderbird Bank, appellee. Jurisdiction is taken pursuant to Rule 47(e)(5) of the Rules of the Supreme Court.

We must answer the following matters on appeal:

1. Did the bank have a right to rescind the $150,000 time certificate of deposit?

2. Was the bank damaged and therefore entitled to judgment against the plaintiffs on the counterclaim?

3. Was the bank entitled to attorney's fees?

The following facts are necessary for a determination of the matter on appeal. Amos Flight Operations, Inc., Donald L. Amos and Howard W. Bollman, dba Zonic Air Freight Lines, needed funds to continue the operation of their air freight business. They entered into negotiations with Roy S. Stuhley and Glen Cole to sell a 40% interest in the business for $150,000. It was evidently the intention of Amos and Bollman to use this money to finance the further operations of the Zonic Air Freight Lines. It was agreed that Stuhley and Cole, who lived in California and allegedly represented persons who were to purchase the 40% interest in Zonic, would arrange the deposit of the $150,000 in the Bank of California to the account of the Thunderbird Bank and Zonic Air Freight Lines. It was also agreed that Stuhley and Cole were to receive $15,000 for their services in securing these funds. The following letter was then given to the Thunderbird Bank:

"Dear Mr. Overbey:

"We the undersigned will transfer $150,000.00 to the account of Zonic Air Freight Lines for the purchase of a Time Certificate of Deposit in an equal amount with interest at the rate of 7% per annum, payable semiannually from the date of the certificate until the maturity of 36 months. The above investment is made in exchange for purchase of 40% interest in Zonic Air Freight Lines.

\* \* \* \* \* \*

"It is my understanding that Zonic Air Freight Lines will secure a $100,000.00 loan pledging the $150,000.00 certificate as collateral. Additionally, they will purchase $13,500.00 Time Certificates of Deposit for further interest payment.

"It is my understanding that you are entering into the loan with the $150,000.00 as collateral without making a feasibility or profitability study with the loan based solely on the pledged collateral on the Time Certificate of Deposit.

"If I may be of any further assistance, please contact me immediately.

Roy S. Stuhley /s/

Glen Cole /s/

Donald L. Amos, President /s/

Approved: /s/ E. R. Overbey

(Thunderbird Bank)"

On the same day Overbey, on behalf of the Thunderbird Bank, sent Stuhley, in California, the following letter:

"Dr. Mr. Stuhley:

"As in accordance with your request dated August 3, 1970, we wish to advise you that the Thunderbird Bank will accept the sum of $150,000 drawn on the account of Zonic Air Freight Lines (said account carried with this bank) for the purchase of a Time Certificate of Deposit for said amount to mature at the end of thirty-six months with semi-annual inter-

est payments. Interest payments will be paid by the bank at the rate of 7% per annum with said interest to be made payable to Zonic Air Freight Lines.

Sincerely,

E. R. Overbey"

The Bank of California was a correspondent bank for the Thunderbird Bank and Thunderbird Bank maintained an account with the Bank of California. On 4 August 1970, according to an employee of the California Bank, Roy S. Stuhley came into the Southern California headquarters of the Bank of California to ask if the Bank of California would accept for deposit to the account of the Thunderbird Bank the amount of $150,000. An officer of the California bank telephoned an officer of the Thunderbird Bank and it was concluded that this could be done and that the Thunderbird Bank was expecting such a transaction. Stuhley did not deposit the amount of $150,000 though the Thunderbird Bank was under the impression that the amount had in fact been deposited. As a result the Thunderbird Bank reflected on its records a transfer of funds to its account with the Bank of California for the credit of Zonic Air Freight. On the next day Amos and Bollman met with Overbey. A checking account was opened in the name of Zonic with the deposit of $25 and the account was credited with the sum of $150,000.

On 6 August 1970, Zonic purchased from the bank a $150,000 time certificate of deposit. It was purchased with a check drawn on the Zonic account previously credited with the same amount. The check was posted to the Zonic account and stamped "paid" on Friday, 7 August 1970.

On Monday, 10 August 1970, Amos and Bollman, dba Zonic, obtained from the bank a loan of $100,000 secured by a pledge of the $150,000 time certificate of deposit. The bank then credited the Zonic account with the amount of $100,000.

Amos and Bollman then issued a Zonic check to the bank in the amount of $13,500

to purchase six time certificates of deposit, each in the amount of $2,250, issued in the name of Zonic. The check was posted and marked "paid."

On the same day Amos and Bollman issued another check drawn on Zonic's account for $15,000 payable to Roy S. Stuhley. The check was cashed at the Bank of California on the same day. Two more checks on Zonic's account were issued. One check for $6,153.98 was given to the bank to pay off a lien held by the bank on a Shinn airplane which had been previously sold by Amos Flight to one John Hale. This check was stamped "paid" on the day it was issued. Another check in the sum of $2,057.33 payable to the Continental Bank was negotiated by the Continental Bank and not repaid.

On 13 August 1970 the bank was notified that the $150,000 had not, in fact, been deposited in the Bank of California. Amos was so advised. The bank worked with Amos and Bollman and contacted Mr. Stuhley in an attempt to get the deposit into the Bank of California. Negotiations were unsuccessful and on 18 August 1970 the bank notified Amos and Bollman that the bank had rescinded all transactions relating to the $150,000 time certificate of deposit and the $100,000 loan. The checks issued were dishonored and Zonic's account was reduced to a balance of $1.00.

Plaintiffs, Amos Flight Operations, Inc., Amos and Bollman, dba Zonic Air Freight Lines, instituted this action against the bank. The complaint consisted of four claims for relief:

1. for the sum of $13,500 plus interest, the amount represented by the six $2,250 time certificates of deposit;

2. for the amount of $150,000 for conversion of and dishonor of the $150,000 time certificate of deposit;

3. for $50,000 attorney's fees; and

4. for damages for refusing to release the lien on the Shinn airplane.

The bank advanced the affirmative defense of failure of consideration and mu-

tual mistake of fact. The bank also counterclaimed as follows:

1. Count 1 for damages in excess of $16,035.53 resulting in the failure to transfer the $150,000 to the account of Zonic. This includes the amount of $15,000 paid to Stuhley and the $2,057.33 check to the Continental Bank less setoff and credits;

2. Counts 2, 3, 4, and 5 were claims against Bollman for indebtedness due the bank on promissory notes; and

3. Count 6 was a claim against all plaintiffs for $16,035.53 as and for the sum remaining due on the $100,000 promissory note. This is the same amount as asked for in Count 1.

The matter was tried to the court without a jury. Judgment was entered in favor of the Thunderbird Bank and against plaintiffs on all allegations in plaintiffs' complaint. Judgment was entered in favor of the bank on counts one through five of its counterclaim. Judgment was entered in favor of plaintiffs and against the bank on Count 6 of its counterclaim. From this judgment plaintiffs appeal.

### COULD THE BANK RESCIND?

■ We are faced at the outset with plaintiffs' contention that the issues of this case are governed by the Uniform Commercial Code as found in A.R.S. Chapter 14. Plaintiffs assert that want or failure of consideration or other equitable defenses are not proper defenses to the bank's liability because under the Uniform Commercial Code a bank is liable to a payee for the face amount of a time certificate of deposit if the payee has not been guilty of fraud or inequitable conduct. A.R.S. § 44-2556(B).

This might be true if the plaintiffs (payees) were holders in due course which they are not. A.R.S. § 44-2532 of the Uniform Commercial Code states:

"A. A holder in due course is a holder who takes the instrument:

1. For value; *and*

2. In good faith; *and*

3. Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

"B. A payee may be a holder in due course." (Emphasis ours)

And A.R.S. § 44-2533 states:

"A holder take the instrument for value:

"1. To the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or

"2. When he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due; or

"3. When he gives a negotiable instrument for it or makes an irrevocable commitment to a third person."

A.R.S. § 44-2536(3) provides that a person who is not a holder in due course takes an instrument subject to: all defenses of any party which would be available in an action on a simple contract as well as the defense of want or failure of consideration; non-performance of any condition precedent. Plaintiffs were not holders in due course because they did not take the $150,000 certificate of deposit for value. This is tacitly if not blatantly admitted by the statement of Mr. Bollman in his testimony at trial:

"Q Did you make the payment required by the payment notice, Mr. Bollman?

"A No, sir, I didn't.

"Q Assuming that you prevailed and recover—assuming that you recover in this action, that you get the $150,000 on the TCD, what does the Thunderbird Bank get?

"MR. HOLMAN: Objection, your honor, its immaterial, calling for his conclusion.

"Q BY MR. BARTON: Well, what will you have given them for the $150,000 that you are going to get?

"A  If we get $150,000 in this action, what would we have given to the Thunderbird Bank?

"Q  That's correct.

"A  Nothing. It was a normal course of business. We wouldn't give them anything. Our applause for doing business according to the books."

And the appellant's brief stated:

"In conclusion, the total problem in this case was a result of the stupidity of the Bank officials in initially deciding to place $150,000 in appellants' bank account. All transactions from that point are governed by the provisions of the Uniform Commercial Code dealing with checks, Certificates of Deposit, etc. as fully explained in Appellants' Opening Brief. If the Bank had a right to do anything after belatedly discovering the error, it and it alone, had made, the actions would have had to have been based upon default in the provisions of the loan agreement, and judgment was entered against the Bank and for appellants on the count of the Bank's Counterclaim based on the loan agreement, and it is indeed doubtful whether or not there was any default on the loan agreement. The Bank, having made an improvident loan (or so it appeared to them), should have simply lived with the loan and not reacted in a manner to destroy appellants' ability to repay the same."

Both the plaintiffs and the bank were parties to the original transaction. As between original parties, it is immaterial whether the note is negotiable or non-negotiable. *Gross v. Von Dolcke* (Mich.), 313 Mich. 132, 20 N.W.2d 838 (1945). Personal defenses are available between immediate parties to an instrument under the Uniform Commercial Code as adopted in this State. See *Wilmington Trust Co. v. Delaware Auto Sales* (Del.), 271 A.2d 41 (1970).

Assuming a lack of fraud on the part of the plaintiffs, we believe that the plaintiffs may not prevail on two grounds:

1. There was failure of consideration for the $150,000 certificate of deposit and where there is an entire or substantial failure of consideration a contract may be rescinded. *Fish v. Valley National Bank of Phoenix*, 64 Ariz. 164, 167 P.2d 107 (1946); *Mahurin v. Schmeck*, 95 Ariz. 333, 390 P.2d 576 (1964).

Plaintiffs maintain that parol evidence is not admissible to contradict or explain the consideration for the certificates of deposit. We disagree. We have held that "in a suit on a promissory note parol evidence is admissible to prove a failure of consideration, * * *. This rule applies equally to all contracts." *Pejsa v. Bridges*, 69 Ariz. 315, 213 P.2d 473 (1950). There was a want of consideration and the bank properly rescinded the $150,000 certificate of desposit.

2. There was a mutual mistake of fact. The Idaho Supreme Court approved the following rule adopted by the Supreme Court of Maryland:

" ' * * * Where parties enter into a contract upon the common assumption that a particular and essential state of things exists with reference to a substantial subject-matter, the nonexistence of that state of things, through default of neither party, ends the liability and prevents the accrual of a duty dependent upon it.' * * *" *Faria v. Southwick*, 81 Idaho 68, 337 P.2d 374, 376 (1959). See *Hammaker v. Schleigh*, 157 Md. 652, 147 A. 790 (1929); see also 17 Am.Jur. 2d, Contracts, § 144.

The facts in this case in their best light show mutual mistake of fact. If there was no mistake on the part of the plaintiffs they show fraud on the part of one or more of the plaintiffs or their agents. In any event, the facts show enough to justify rescission by the bank based upon mutual

mistake of fact. *Mortensen v. Berzell Investment Company,* 102 Ariz. 348, 429 P.2d 945 (1967).

### WAS THE BANK DAMAGED?

 As set forth in the statement of facts, certain checks were drawn on the account by plaintiffs as a result of the crediting of the account of plaintiffs in the amount of $150,000. The check to the Continental Bank, for example, was paid and could not be recovered. The $15,000 check was negotiated by Stuhley. After setoffs and credits the bank showed damages in the amount of $16,053.53. The evidence supports the finding of the trial court that the bank was damaged in this amount as a result of the failure to deposit $150,000 to the account of Zonic Air Freight. We find no error.

### NOTES

Counts 2, 3, 4, and 5 of the bank's counterclaim related to notes given to the bank. The amounts due on these, after the certificate of deposit was rescinded and the loan canceled, remained unpaid and overdue. Judgment was properly entered in favor of the bank.

### ATTORNEY'S FEES

The bank, however, requested attorney's fees on appeal. The bank received $1,000 attorney's fees in the trial court on Counts 2, 3, 4, and 5 which were suits on notes which provided for attorney's fees. We have stated that attorney's fees are also allowed on appeal from suits on contracts which allow attorney's fees. *Steele v. Vanderslice,* 90 Ariz. 277, 367 P. 2d 636 (1961); *Lawrence v. Valley National Bank,* 106 Ariz. 455, 478 P.2d 79 (1970). We therefore will grant the bank an additional $2,000 in attorney's fees on appeal.

We are compelled to make one further comment. It may well be that the legal technicalities of the Uniform Commercial Code are such that reasonable men could

differ as to the application of that code to the facts of this case. As to the equities, however, there is no reasonable basis for a difference of opinion. This law suit is an attempt by the plaintiffs to unjustly enrich themselves at the expense of the defendant bank. To attempt to use the law and the courts for this purpose not only brings disrespect to the judiciary, but is also an unwarranted burden on an already congested court system.

Judgment affirmed.

STRUCKMEYER, V. C. J., and HAYS, J., concur.