619 P.2d 9

**James WHITE and Janell Hunting, Appellees,**

v.

**Frank MATTOX, Appellant.**

**No. 14689.**

Supreme Court of Arizona,
In Division.

Oct. 23, 1980.

Cleere, Guttilla & Hozier by Nicholas C. Guttilla, Phoenix, for appellant.

Yankee, Bernstein & Lutich by James A. Yankee, Phoenix, for appellees.

STRUCKMEYER, Chief Justice.

This appeal by Frank Mattox is from a summary judgment in favor of James White and Janell Hunting on a suit arising out of the rescission of an agreement for the sale of a liquor license. Jurisdiction was accepted pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A, A.R.S. Affirmed.

In 1974, A.R.S. § 4–206 was amended, giving the Arizona State Liquor Board authority to issue additional Series No. 6 (on premises sale of spirituous liquors) and Series No. 9 (off premises sale of spirituous liquors) liquor licenses. Laws 1974, Ch. 175, § 2; see A.R.S. § 4–206(G) (repealed, Laws 1980, Ch. 196, § 1). After a random drawing as provided by A.R.S. § 4–203(B), the liquor board issued a newly authorized Series No. 6 license to Mattox.

In September 1975, Mattox advertised the license for sale. White and Hunting contacted Mattox, paid him $1,000 earnest money, and later signed an agreement to purchase the license. White and Hunting made an additional payment of $4,000, and in the agreement promised to make additional monthly payments and to apply to the State Liquor Board for a transfer of the license. After White and Hunting failed to make the February 1976 payment, the sale of the license was renegotiated, resulting in the signing of a second agreement. This revised agreement provided that if White and Hunting failed to make their April 15, 1976 payment, all agreements would become null and void, with Mattox having the right to retain all payments made by White and Hunting. Since White and Hunting had not up to this time filed for the license transfer, the agreement also provided that they would within three days of April 15 file the necessary papers to transfer the license from Mattox.

White and Hunting made the April 15th payment, but in attempting to transfer the license, learned from the office of the Arizona Department of Liquor Licenses and Control that it could not be transferred. White and Hunting refused to make any further payments on the revised agreement and instituted this action to recover the money paid to Mattox. Both parties moved for summary judgment. The court denied Mattox's motion, granted White's and Hunting's motion and entered judgment for $7,590 in their favor.

■ Mattox's position in this Court is, first, that whether the license was transferable was a matter in dispute, but, second, even if it were not, as a matter of law he was entitled to judgment.

A.R.S. § 4–203(F) provides in part:

"A spirituous liquor license, other than a club license, a hotel–motel license and a restaurant license, may be transferred to a person qualified to be a licensee, provided such transfer is pursuant to either judicial decree, a bona fide bulk sale of the entire business and stock in trade, or such other bona fide transactions as may be provided for by a regulation of the board and that such transfer meets the requirements of an original application."

It is undisputed that the agreement between the parties contemplated the sale of a bare liquor license without an accompanying sale of a business. Since there is no assertion that there is a regulation which authorized the sale, under the plain wording of the statute the license could not be transferred.

Mattox contends that the liquor board was in fact transferring licenses not in active use, and thus White and Hunting could have had a transfer if they had applied for it. In opposing the White and Hunting motion for summary judgment, Mattox introduced an affidavit from an assistant su-

perintendent of the Arizona State Liquor Board, which stated the assistant superintendent was unaware of a license transfer being denied "on the sole basis that the spirituous liquor license involved in the transfer was an inactive/drawn license * * that on more than one occasion the Arizona State Liquor Board approved a transfer of an inactive/drawn license * * * ". Mattox also filed his own affidavit which set forth that he sold the license to other parties after White and Hunting rescinded the transaction and that the license was transferred to the new buyers.

These affidavits and Mattox's argument miss the point. It was not the fact that the license was inactive which prevented its transfer. The transfer was objectionable because it was not, as the statute requires, "pursuant to either judicial decree, a bona fide bulk sale of the entire business and stock in trade, and such other bona fide transactions as may be provided for by a regulation of the board * * * ".[1]

Mattox's affidavit failed to disclose what was revealed in his deposition, namely, that when the license was transferred to the new buyers, it was pursuant to a bulk sale of a business.

"Q. When you ended up selling the license to those parties, did it have a similar valuation as your deal with my clients, that is about 18,000 dollars, or whatever it was?

A. Well, it included some other fixtures. I revamped this one particular location, and I sold it as a business.

* * * * * *

Q. And you say that you sold the license to the ultimate purchasers, whose names—

A. Hume and Molinare—

Q. Yes—along with some fixtures for how much money, total?

A. Let's see, 65 or 70,000, I think, total.

Q. And those were bar fixtures that you sold along with it?

A. Plus revamping the building, inside and out, yes."

Mattox also argues that even if the license could not be transferred, White and Hunting were not entitled to a judgment as a matter of law, and that he was. As to this, the motion for summary judgment by White and Hunting was based on the premise that the agreement was impossible to perform at the time it was made. Such an impossibility has been described as a mistake of existing fact. See *Dobbs*, Remedies, § 11.3, p. 733, § 13.3, p. 965. Where a mistake involves a fact, the existence of which was a basic assumption of the parties, no contract results. *Dobbs*, supra; *see Amos Flight Operations, Inc. v. Thunderbird Bank*, 112 Ariz. 263, 267, 540 P.2d 1244 (1975); *cf.* A.R.S. § 44–2378, U.C.C. § 2–615 (failure of presupposed condition excuses performance under contract for sale of goods).

This case is similar to *Sherwood v. Walker*, 66 Mich. 568, 33 N.W. 919 (1887), the classic case of the barren cow. There, the parties agreed to the sale of a cow which was assumed to be barren. The cow was not barren, but was carrying a calf. The Michigan Supreme Court found there was no contract, rationalizing:

"It is true she is now the identical animal that they thought her to be when the contract was made; there is no mistake as to the identity of the creature. Yet the mistake was not of the mere quality of the animal, but went to the

1. By Laws of 1980, Ch. 84, § 3, the Arizona State Legislature further restricted transfers of Series No. 6 and Series No. 9 liquor licenses by adding the following to A.R.S. § 4–203:

"J. A spirituous liquor license, as described in § 4–209, subsection B, paragraphs 6 and 9, issued from and after August 31, 1980 shall not be voluntarily transferred from the licensee to another person unless all of the following apply:

1. The license was used in the operation of a bona fide business continually on a full–time basis for at least two years.

2. The license was used in the operation of a bona fide business at the same location and on a full–time basis for at least one year.

3. The transfer is part of the sale or liquidation of the ongoing business."

**184**

very nature of the thing. A barren cow is substantially a different creature than a breeding one." *Id.* at 923.

In the instant case, a license which cannot be transferred is substantially different from a license that can be transferred.

In entering into an agreement for the sale of the license, the parties assumed the license could be transferred. Since it could not, there was a total failure of consideration and Mattox should not retain the money paid in the expectation that the license would be transferred.

■ Mattox urges that he was entitled to a judgment as a matter of law, arguing that this was an illegal contract and, therefore, the court should leave the parties where it found them. But not all contracts involving a violation of a statute are void. Recovery will be denied if the acts to be performed under the contract are themselves illegal or contrary to public policy. *E & S Insulation Co. v. E. L. Jones Const.*, 121 Ariz. 468, 470, 591 P.2d 560 (App.1979); *Mountain States Bolt, Nut and Screw Co. v. Best—Way Transportation*, 116 Ariz. 123, 124, 568 P.2d 430 (App.1977).

In the instant case, the Legislature has not prohibited the transfer of liquor licenses. Transfers are not per se illegal. The transfer is made subject to conditions and must conform to the standards prescribed by the State. Hence, since the act of transfer is not forbidden as illegal or contrary to public policy, recovery of the purchase price for the license should not be withheld. *Compare Hom Moon Jung v. Soo*, 64 Ariz. 216, 167 P.2d 929 (1946), *with Clark v. Tinnin*, 81 Ariz. 259, 304 P.2d 947 (1956).

Affirmed.

HAYS and GORDON, JJ., concur.