ROBERT D. ELLIOT, Appellant, *v.* MARILYN A. RESNICK, Respondent.

No. 27894

January 22, 1998

952 P.2d 961

*David M. Schieck,* Las Vegas, for Appellant.

*Kirby R. Wells & Associates,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Respondent Marilyn A. Resnick bought a bar in Las Vegas, Nevada, on January 9, 1993, from Steve Kaboli. Resnick purchased the property under the belief that the liquor license was included in the sale of the business. However, appellant Robert D. Elliot, the original owner, who had sold the bar to Kaboli, asserted that he still had the right, title, and interest in the license, even though he no longer owned the physical premises of the bar. Resnick accused Elliot of failing to cooperate with the City of Las Vegas (the City) in her application for the transfer of the liquor license. The district court found that Resnick was the lawful owner of the liquor license and that she had the right to have the license transferred to her subject to approval by the City.

Elliot appeals the lower court's decision, arguing that earlier contracts he had made with Resnick's predecessors in interest were illegal and void because the contracts included the sale of a liquor license. Elliot contends that these purchasers did not have

the right to the liquor license, because according to the Las Vegas Municipal Code (LVMC), a liquor license cannot be sold or transferred without prior approval. Therefore, Elliot argues that he is still the rightful owner of the liquor license and that the subsequent purchasers of the business and license, including Resnick, are not legally entitled to the license. We conclude that Resnick had the right to have the liquor license transferred to her, subject to the City's approval of the transfer and, therefore, affirm the district court's judgment.

## FACTS

In 1991, Elliot owned a bar named Faces of Las Vegas (Faces) located at 2354 East Bonanza Road in Las Vegas. Elliot had been issued a liquor license by the City, and Elliot's brother, Jay Elliot (Jay), oversaw the opening of Faces, but did not hold an interest in the business. In April of 1991, Kaboli negotiated with Jay to buy fifty percent of Faces from Elliot for $15,000.00. According to Jay and Elliot, Kaboli was not interested in the liquor license; Kaboli only wanted to be a partner in the business. Elliot informed Kaboli that the liquor license could not be used as collateral or encumbered pursuant to the Las Vegas Municipal Code and Nevada statutes.

Around this time, Kaboli's office manager, Ira Martinez, informed Kaboli that she wanted to purchase a share of Faces. On April 11, 1991, instead of purchasing a share of the business himself, Kaboli loaned Martinez $15,000.00 in order for her to buy fifty percent of the bar and the liquor license. That same day, Elliot sold Martinez a fifty percent interest in Faces, including the liquor license, for $15,000.00. The contract between Elliot and Martinez read:

> Seller [Elliot] does hereby sell, convey and transfer to Buyer [Martinez] one-half (1/2) of his ownership interest in the business including the liquor license hereinbefore referred to for the sum of Fifteen Thousand Dollars ($15,000.00). Buyer is purchasing her one-half (1/2) interest in the business "as is" and she shall take all steps necessary to become licensed as a co-owner with Seller.

After acquiring the property, Martinez never applied for and was never approved to hold a liquor license.

On May 13, 1991, Martinez assigned her fifty percent interest in Faces to Kaboli, which included the rights to the business and liquor license that she had acquired from Elliot. The assignment of this interest to Kaboli constituted Martinez's repayment in full of Kaboli's April 11, 1991 $15,000.00 loan. On June 25, 1991, Elliot sold one-half of his remaining fifty percent interest

(twenty-five percent of the total) in Faces to Kaboli for $10,000.00. Kaboli's interest in the bar now totaled seventy-five percent, and Elliot owned the remaining twenty-five percent.

The June 25, 1991 sales agreement signed by Kaboli listed the assets of the business and included a description of the liquor license. Specifically, the sales agreement included: "fixtures and equipment and a City of Las Vegas Liquor License No. LO-4-00120-4-000015." The contract specifically states that:

> [Elliot] does hereby sell, convey and transfer to [Kaboli] one-half (1/2) of his ownership interest in the business including the liquor license hereinbefore referred to for the sum of Ten Thousand Dollars ($10,000.00). [Kaboli] is purchasing his one-half (25%) interest in the business "as is" and he shall take all steps necessary to become licensed as a co-owner with [Elliot].

*Id.*

On or about October 4, 1991, Elliot sold his remaining twenty-five percent interest in Faces and the liquor license to Kaboli for $5,000.00. After this transaction, Kaboli owned one hundred percent of Faces. On January 9, 1993, Kaboli sold, transferred, and assigned his entire interest in Faces, including the liquor license, to Resnick for the sum of $60,000.00. The sales agreement between Kaboli and Resnick stated that "the undersigned [Kaboli] does hereby sell, transfer and deliver unto Marilyn A. Resnick (buyer) his right, title and interest in Las Vegas City Liquor License known as LO4-00120-4-000015." Kaboli drafted and signed the agreement. Resnick recorded this sales agreement with the Clark County Recorder.

Resnick did not seek City approval of the liquor license transfer prior to purchasing the property from Kaboli. However, she subsequently secured a new location in which to operate Faces and submitted an application with the City to transfer the liquor license. The City informed Resnick that the title of the liquor license was clouded, as Elliot had transferred his purported interest in the liquor license to his nephew for $500.00 just two days prior to the date of Resnick's application for the transfer of the liquor license. Elliot refused to acknowledge Resnick's interest in the liquor license. Resnick was told by the city licensing service that she needed to obtain a court order before her application could be further processed.

On February 17, 1994, Resnick filed a complaint against Elliot, claiming that she was the lawful owner and holder of the liquor license and that Elliot had no right, title, or interest therein. Resnick also claimed that Elliot had breached his sales contracts with her predecessors in interest. On March 8, 1994,

Elliot filed an answer denying Resnick's claims. A bench trial took place on May 18, 1995.

At trial, Resnick claimed that Elliot deliberately clouded the title to the license so that Resnick's application could not be processed. Resnick argued that Elliot had an obligation to take all steps necessary to effectuate the transfer of the liquor license to her, even though Elliot had not directly sold her the license. Resnick presented evidence that Elliot had sold the license to Martinez and Kaboli, promising to ensure that the liquor license would be transferred to them, and that she had purchased the bar and liquor license from Kaboli with this same condition. Kaboli testified that he had never been authorized to hold the liquor license and that he had never applied to, nor requested approval from, the City to sell the liquor license.

Elliot asserted that the January 9, 1993 sales agreement between Kaboli and Resnick falsely stated that Kaboli was the lawful owner of the liquor license and that the license was free of any encumbrances. Elliot submitted a letter from the City dated June 18, 1993, as evidence that he remained the licensee. The letter memorialized a June 11, 1993 meeting between Elliot and the chief of the privilege license division of the City. The letter stated that the "license will remain in non-operational status and you [Elliot] will remain the licensee [until] the dispute between you and Mr. Kaboli is settled." The non-operational status meant that the license could not be operated until a new location for it was found or until a new owner was approved by the City. The license services supervisor for the City testified at trial that if Resnick obtained a court order resolving the conflicting claims in her favor, the City would proceed with processing her application.

In closing arguments, Elliot's attorney argued that the contracts for the sale of the liquor license were illegal and unenforceable pursuant to Nevada law. Resnick's attorney objected to this illegality defense, claiming that it had not been pleaded as an affirmative defense and that he was unaware that illegality of the contracts was an issue. However, because Elliot had raised the issue in his pre-trial memorandum, the court permitted the parties to file post-trial briefs regarding the issue of whether Elliot's illegality defense was valid.

The district court concluded that Elliot had breached his agreement with Resnick's predecessors, Kaboli and Martinez, when he attempted to transfer his interest in the liquor license to his nephew. The district court declared that nothing in the contracts rendered them illegal or unenforceable. Thus, the district court held that Resnick was entitled to the liquor license and that she had the exclusive right to transfer the liquor license to a suitable

location, in compliance with City ordinances and subject to approval by the City. The lower court ordered Elliot to execute documents necessary to effectuate the transfer of the liquor license to Resnick.

## DISCUSSION

▬▬▬

As a preliminary matter, Resnick argues that the district court erred in permitting Elliot to argue that the contracts at issue were void ab initio. NRCP 8(c) addresses affirmative defenses and states that "a party shall set forth affirmatively . . . illegality . . . and any other matter constituting an avoidance or affirmative defense." If affirmative defenses are not pleaded or tried by consent, they are waived. Idaho Resources v. Freeport-McMoran Gold, 110 Nev. 459, 461, 874 P.2d 742, 743 (1994). It is uncontroverted that Elliot failed to raise the illegality issue as an affirmative defense in his answer and first raised the issue in a pre-trial memorandum; however, NRCP 7 states that a pre-trial memorandum is a motion or other paper and is not a pleading.

NRCP 15(b) states, in part, that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." We have further stated that "an affirmative defense can be considered (if not pleaded) if fairness so dictates and prejudice will not follow." Ivory Ranch v. Quinn River Ranch, 101 Nev. 471, 473, 705 P.2d 673, 675 (1985); see also NRCP 15(b).

▬▬▬

Elliot first raised the illegality issue in a pre-trial memorandum, and Resnick did not object to its contents. In addition, Elliot put witnesses on the stand who discussed the statutes regarding the sale of a liquor license and testified as to what constitutes an illegal sale of a liquor license, making it clear that illegality was the basis of Elliot's defense; Resnick did not object to this testimony. See Schwartz v. Schwartz, 95 Nev. 202, 206, 591 P.2d 1137, 1140 (1979) (stating that the issue was tried by consent where the defendant had raised the issues in his opening argument, it had been explored in discovery, and there was no objection to the admission of evidence relevant to the issue at trial). Given these facts, we conclude that the district court properly considered the defense of illegality.

Elliot argues that the district court erred in not finding that his contracts with Resnick's predecessors in interest, and between Kaboli and Resnick, were void ab initio because those contracts involved the sale of the liquor license prior to obtaining City approval. We disagree.

LVMC § 6.50.420 states that:

> It is unlawful for any person to encumber any license by means of a lease, pledge, mortgage, deed of trust, security interest or other manner of alienation; provided, however, that this prohibition shall not apply to a transfer or encumbrance of a person's interest in the licensee pursuant to the prior approval of the City Council, if such approval is otherwise required by this Chapter.

The district court determined that Resnick had the exclusive right to the liquor license and that the actual transfer was subject to approval by the City. The district court noted that Resnick would have to comply with all city ordinances in connection with her application and ordered Elliot to execute all documents necessary to transfer the license.

While we have never addressed the issue of the sale of a liquor license without obtaining governmental approval prior to the completion of the sale, courts in other jurisdictions have resolved the issue in a manner consistent with the district court's ruling. *See* Kurpjuweit v. Northwestern Development Company, Inc., 708 P.2d 39 (Wyo. 1985). Kurpjuweit argued that a provision in a bar lease requiring reassignment or transfer of the liquor license to Northwestern was illegal and unenforceable because it violated a Wyoming statute very similar to LVMC § 6.50.420, which stated that the licensing authority must give prior approval to a transfer or assignment of a liquor license. *Id.* at 45.

The Wyoming court concluded that because the statute expressly permitted the transfer of a liquor license, the provision in the lease containing the requirement that the lessee transfer the liquor license to the lessor at the conclusion of the lease was "valid and enforceable *as between the parties.*" *Id.* at 46. However, the court further held that although the provision in the lease was enforceable between the parties, it did "not bind the county commissioners to allow the transfer" and that "[t]he licensing authority still must follow the statutory procedures and exercise its independent judgment whether such transfer should be allowed." *Id.*; *see also* Groshelle v. Reid, 893 P.2d 314, 317 (Mont. 1995) (stating that "the owner of a beer and wine license may transfer the license, subject to approval of the Department of Revenue"); Samuel's Realty Co., Inc. v. McCarthy, 512 A.2d 872, 874 (R.I. 1986) (stating that "[a]s a general rule, the holder of a liquor license may freely contract to transfer the license to other persons subject to official approval of the transfer, and such contracts are valid and specifically enforceable"). We find the reasoning in *Kurpjuweit, Groshelle,* and *Samuel's Realty Co.* to be persuasive support for the district court's ruling.

In White v. Mattox, 619 P.2d 9 (Ariz. 1980), Mattox sold his liquor license to White pursuant to a sales agreement. After making several installment payments to Mattox, White learned that the transfer of a liquor license without an accompanying sale of a business was illegal pursuant to a statute. *Id.* at 10. Thereafter, White brought suit for recision of the sales agreement and restitution of all the monies paid to the defendant. However, Mattox argued that the contract was legal and, even if it was not, that the court should leave the parties where it found them. *Id.* at 10, 12. The Arizona Supreme Court rejected Mattox's argument and concluded that:

> [T]he Legislature has not prohibited the transfer of liquor licenses. Transfers are not per se illegal. The transfer is made subject to conditions and must conform to the standards prescribed by the State. Hence, since the act of transfer is not forbidden as illegal or contrary to public policy, recovery of the purchase price for the license should not be withheld.

*Id.* at 12.

LVMC § 6.50.420 does not render the transfer of the liquor license illegal; rather, it subjects sales or transfers of liquor licenses to several conditions. Therefore, as stated in *White,* we conclude that the transfer was not illegal or contrary to public policy; however, as stated by the district court, the transfer will not be completed until the City's conditions are satisfied.[1] *See* Greve v. Leger, Limited, 415 P.2d 824, 827 (Cal. 1966) (stating that transfers or sales of licenses are valid and specifically enforceable, but are subject to official approval).

Elliot makes a secondary argument that it was improper for

---

[1]Questions of statutory construction are subject to de novo review by this court. SIIS v. Snyder, 109 Nev. 1223, 1227, 865 P.2d 1168, 1170 (1993). However, an administrative agency charged with the duty of administering an act is impliedly clothed with the power to construe the relevant laws and set necessary precedent to administrative action, and the construction placed on a statute by the agency charged with the duty of administering it is entitled to deference. *Id.* at 1228, 865 P.2d at 1170. It appears that the City permitted liquor licenses to be transferred by the method exhibited in the instant case. The license services supervisor for the City at the time of the contested sale testified that the sale of a liquor license was often completed prior to seeking approval for the sale, that all transfers were contingent upon approval of the City, and that without the approval of the City, there could be no effective transfer. The supervisor opined that the agreements at issue implicitly stated that the sale of the liquor license was subject to government approval. We think deference should be given to this opinion.

Resnick to sue him because no contract existed between himself and Resnick. We reject this contention. The sale from Elliot to Martinez, and later to Kaboli, was valid pending further governmental approval, and Elliot was under the obligation to take all steps necessary to effectuate the transfer of the liquor license. However, before Elliot could take the steps necessary to effectuate the transfers to Kaboli and Martinez, Kaboli sold his interest in the liquor license to Resnick.

We conclude that such an interest necessarily included Elliot's obligation to take all steps necessary to effectuate that transfer. Therefore, after the Kaboli sale to Resnick, Elliot owed that obligation to Resnick, and Resnick's lawsuit to enforce that obligation was proper. Furthermore, if Kaboli assigned his rights in the liquor license to Resnick, Resnick would have stepped into the shoes of Kaboli and had all the rights that Kaboli had. *Cf.* Estate of Jordan v. Hartford Acc. & Indem., 844 P.2d 403, 407 (Wash. 1993). Because Kaboli had the right to have Elliot effectuate the transfer, Resnick had the same right after the assignment, and her lawsuit against Elliot was proper.

## CONCLUSION

We conclude that the district court did not err in permitting Elliot to raise the illegality issue. We further conclude that the sale from Elliot to Martinez/Kaboli and from Kaboli/Martinez to Resnick was legal and enforceable and that Resnick had standing to sue Elliot.