NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MIKAYLA FOSS, et al., *Plaintiffs/Appellants*,

v.

ARIZONA BOARD OF REGENTS, *Defendant/Appellee*.

No. 1 CA-CV 18-0781
FILED 11-7-2019

Appeal from the Superior Court in Maricopa County
No. CV2018-006692
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

The Entrekin Law Firm, Phoenix
By B. Lance Entrekin
*Co-Counsel for Plaintiffs/Appellants*

Tucker & Miller, LLLP, Phoenix
By Daniel P. J. Miller
*Co-Counsel for Plaintiffs/Appellants*

Osborn Maledon, PA, Phoenix
By Lynne C. Adams, Mary R. O'Grady, Emma Cone-Roddy
*Counsel for Defendant/Appellee*

_____

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Chief Judge Peter B. Swann joined.

_____

**W E I N Z W E I G**, Judge:

¶1          Arizona law directs that Arizona residents are entitled to reduced in-state tuition rates at Arizona's public universities.  Meanwhile, federal immigration law prohibits undocumented aliens from receiving in-state tuition benefits unless the same benefits are provided to all United States citizens and nationals.  At issue here is whether three non-resident students are entitled to recoup the cash difference between in-state and out-of-state tuition for the 2017-2018 academic year because a discrete group of undocumented aliens received in-state tuition rates to attend Arizona's public universities during that period.  The superior court dismissed the lawsuit for failure to state a claim because the non-resident students had no contract or entitlement to receive the reduced tuition rates provided to Arizona residents.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2          On appeal from a motion to dismiss, this court "assume[s] the truth of [all] well-pled factual allegations and indulge[s] all reasonable inferences therefrom." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008).

¶3          The Arizona Board of Regents (ABOR) is the governing body for Arizona State University, the University of Arizona and Northern Arizona University.  ABOR fixes student tuition rates under Arizona law, which directs that Arizona residents enjoy reduced in-state tuition rates at Arizona's public universities.  A.R.S. §§ 15-1626(A)(5), -1802(A).  To achieve resident status, a student must meet the requirements set forth in A.R.S. § 15-1802(B), including that "the person is domiciled in this state for one year."

¶4          Plaintiffs Mikayla Foss, Eleanor Wiersma and Abigail Garbarino were students at either Arizona State University or the University of Arizona during the 2017-2018 academic year.  They are United States citizens, but not Arizona residents, and thus paid out-of-state tuition.

¶5          To understand their claims, we turn to the federal Illegal Immigration Reform Act and Immigrant Responsibility Act and the Deferred Action for Childhood Arrivals program.

*Illegal Immigration Reform Act*

¶6          In 1996, the federal government passed the Illegal Immigration Reform and Immigrant Responsibility Act. Pub. L. No. 104-208, 110 Stat. 3009 (1996). As relevant here, the Act provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623 ("Section 1623").

¶7          Section 1623's prohibition was incorporated into Arizona law at A.R.S. § 15-1803(B), which directs that "a person who was not a citizen or legal resident of the United States or who is without lawful immigration status is not entitled to classification as an in-state student pursuant to § 15-1802."

*Deferred Action for Childhood Arrivals*

¶8          In 2012, the U.S. Department of Homeland Security recognized a Deferred Action for Childhood Arrivals ("DACA") program, exercising its prosecutorial discretion to defer deportation of certain undocumented aliens who entered the country as children.

¶9          Beginning in 2013, Arizona courts were asked to consider whether DACA recipients who otherwise met Arizona's statutory residency requirements could receive in-state tuition rates at Arizona's public universities. In 2015, a superior court held that DACA recipients were "lawfully present" and thus eligible for in-state tuition. Based on that decision, ABOR formally recognized that DACA students "were able to establish in-state residency for tuition purposes at Arizona's public universities." But in June 2017, the Arizona Court of Appeals reversed the superior court. *State ex rel. Brnovich v. Maricopa Cty. Cmty. Coll. Dist. Bd.*, 242 Ariz. 325 (App. 2017). The Arizona Supreme Court then agreed to hear the case. ABOR decided it would, in the interim, keep offering in-state tuition to DACA members who qualified as Arizona residents.

¶10          In May 2018, the Arizona Supreme Court reached the same conclusion as this court, holding that DACA students were not "lawfully present" under Section 1623, and therefore could not receive in-state tuition

unless made available to all non-resident students with U.S. citizenship. *State ex rel. Brnovich v. Maricopa Cty. Cmty. Coll. Dist.*, 243 Ariz. 539, 542, ¶ 16 (2018) ("*MCCCD*"). ABOR immediately complied and terminated in-state tuition for DACA members.

*This Lawsuit*

**¶11** This lawsuit followed. Plaintiffs assert claims for declaratory judgment, breach of contract and unjust enrichment; each claim turns on the theory that ABOR overcharged the non-resident students for tuition under Section 1623. Plaintiffs' complaint alleges an "entitlement to in[-]state tuition" for the 2017-2018 academic year when ABOR charged in-state tuition to DACA members who satisfied Arizona's residency requirements.

**¶12** ABOR moved to dismiss, arguing several grounds, including that Plaintiffs' claims all hinge on a federal statute (Section 1623) that confers no rights or entitlement upon Plaintiffs to receive in-state tuition, but instead prohibits undocumented aliens from receiving in-state tuition. The court heard oral argument and asked Plaintiffs' counsel if the issue was "just whether or not [Section 1623] gives you a cause of action," which Plaintiffs' counsel said was "primarily true."

**¶13** The superior court then dismissed Plaintiffs' complaint for failure to state a claim under Rule 12(b)(6), Arizona Rules of Civil Procedure. The court interpreted Section 1623 as restricting the scope of permissible tuition benefits for undocumented aliens. It held the statute "does not provide an entitlement to [in-state tuition for all] U.S. citizens, nor does it prohibit educational institutions from classifying non-resident students as such, or from collecting non-resident tuition from them." Because Plaintiffs' claims were "based solely upon a violation of [this federal] statute," the court held that Plaintiffs failed to state a claim.

**¶14** Plaintiffs timely appealed and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶15** We review *de novo* the superior court's ruling on a Rule 12(b)(6) motion to dismiss. *Coleman v. City of Mesa*, 230 Ariz. 352, 355-56, ¶ 7 (2012). A Rule 12(b)(6) motion to dismiss should be granted if the complaint fails to state a claim upon which relief can be granted. On appeal, this court "must assume the truth of all of the complaint's material allegations [and] accord the plaintiffs the benefit of all inferences the

complaint can reasonably support," *Gatecliff v. Great Republic Life Ins. Co.*, 154 Ariz. 502, 508 (App. 1987), but we do not accept as true "allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts," *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4 (App. 2005).

*Declaratory Judgment*

**¶16** Plaintiffs argue their complaint stated a Uniform Declaratory Judgments Act ("UDJA") claim upon which relief could be granted. A.R.S. § 12-1832. We disagree.

**¶17** The UDJA generally provides that any person whose "rights, status, or other legal relations are affected by statute" may seek a judicial determination about the construction or validity of the statute. A.R.S. § 12–1832. On a motion to dismiss, Plaintiffs must allege sufficient facts to establish both (1) a protectible interest and (2) a justiciable controversy over the denial of that interest. *Ariz. Soc'y of Pathologists v. Ariz. Health Care Cost Containment Sys. Admin.*, 201 Ariz. 553, 557, ¶ 19 (App. 2002). The "complaint must assert a legal relationship, status or right in which the party has a definite interest and an assertion of the denial of it by the other party." *Land Dep't v. O'Toole*, 154 Ariz. 43, 47 (App. 1987). Arizona courts have determined that a statute's incidental beneficiaries have no declaratory judgment claim to enforce its terms. *Lancaster v. Ariz. Bd. of Regents*, 143 Ariz. 451, 457 (App. 1984) (dismissing declaratory judgment and contract claims for failure to state a claim for relief).

**¶18** Plaintiffs did not allege sufficient facts in their complaint to establish a protectible interest and justiciable controversy. Although Plaintiffs allege that non-resident students "are entitled to in[-]state tuition rates for the 2017-18 school year under [Section 1623]," the statute's actual words neither create nor confer any entitlement upon them. "[T]he words of a statute are to be given their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended." *MCCCD*, 243 Ariz. at 541.

**¶19** Section 1623 never mentions, much less creates and confers, any enforceable private right for individual, non-resident students. The Tenth Circuit captured the point in *Day v. Bond*, 500 F.3d 1127, 1139 (10th Cir. 2007), when it explained: "Section 1623 does not provide that 'No nonresident citizen shall be denied a benefit' afforded to an illegal alien, but

rather imposes a limit on the authority of postsecondary educational institutions." *Id.*

**¶20** Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens, which explains why the statute is codified in a chapter of the federal immigration code entitled "*Restricting* Welfare and Public *Benefits for Aliens.*" *See generally* 8 U.S.C. §§ 1601 to 1646 (emphasis added). "[Section] 1623 addresses itself to the institutions affected and their authority to provide benefits to illegal aliens, not to the class of nonresident citizens who incidentally benefit from its provisions." *Day*, 500 F.3d at 1139. Plaintiffs' complaint likewise describes the statute as "a comprehensive statutory scheme *for determining aliens' eligibility* for federal, state, and local benefits," rather than as one for determining tuition benefits for non-resident students.

**¶21** For their part, Plaintiffs argue the superior court erroneously concentrated on whether Section 1623 conferred a "private right of action" on non-resident students, insisting that "none of [Plaintiffs'] causes of action are in any way related to the theory that [Section] 1623 confers upon them a private right of action." But Plaintiffs miss the larger point. The UDJA claim fails because Plaintiffs have *no protectible interest* under Section 1623 in the first place.

**¶22** Because Plaintiffs have not sufficiently alleged a protectible interest and justiciable controversy under Section 1623, the superior court properly dismissed their declaratory judgment claim. *See Town of Wickenburg v. State*, 115 Ariz. 465, 468 (App. 1977) ("At the time they attempted to bring this lawsuit, the individual plaintiffs had no rights presently affected. They were, therefore, not in sufficiently direct relationship with the allegedly offending statute to present this Court with an existing controversy capable of judicial resolution.").

*Breach of Contract*

**¶23** Plaintiffs further contend the superior court erred in dismissing their breach of contract claim, alleging that ABOR breached its contracts with all non-resident students by charging them tuition rates "specifically prohibited" under Section 1623.

**¶24** A breach of contract claim requires "the existence of the contract, its breach and the resulting damages." *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96, ¶ 16 (2013). These minimum requirements are not alleged in the complaint. Plaintiffs never allege that ABOR breached an

actual contract term. In fact, their allegations point in the opposite direction: Plaintiffs describe the contract between ABOR and the non-resident students as "an exchange of consideration in the form of tuition monies and educational services," but never allege that ABOR failed to deliver on the promise of "educational services," and concede they paid non-resident tuition as non-resident students.

¶25 Rather than an express contract term, Plaintiffs contend that Section 1623 and all federal statutes are grafted into ABOR's contracts as independent, stand-alone terms, and ABOR breached that term, citing *Ansley v. Banner Health Network*, 246 Ariz. 240, ¶ 47 (App. 2019). We do not read *Ansley* to incorporate all federal statutes into ABOR's contracts, but Plaintiffs' argument would still fail because Section 1623 articulates no entitlement for all non-resident students to receive in-state tuition if an undocumented alien receives that tuition. *Day*, 500 F.3d at 1139.

¶26 Plaintiffs have also offered *White v. Mattox*, 127 Ariz. 181 (1980), for the point that ABOR's student contracts must be rescinded because ABOR "charged an amount that they [were] specifically prohibited from charging by federal law." But *White* neither stands for that proposition nor supports Plaintiffs' claims. In *White*, the court found "no contract result[ed]" based on a "total failure of consideration" when the parties agreed to transfer a non-transferable liquor license. *White,* 127 Ariz. at 184. Here, by contrast, Plaintiffs allege an enforceable contract that ABOR breached; and rather than "a total failure of consideration," Plaintiffs allege that "consideration" was "exchange[d]" as tuition for "educational services." Thus, we affirm the court's dismissal of Plaintiffs' breach of contract claim.

*Unjust Enrichment*

¶27 Last, Plaintiffs claim that ABOR was unjustly enriched through its "improper collections in violation of federal law." A prima facie unjust enrichment claim requires an enrichment, an impoverishment, a connection between them, no justification for the same, and no remedy at law. *Freeman v. Sorchych*, 226 Ariz. 242, 251 (App. 2011).

¶28 Plaintiffs have not alleged the minimum requirements of an unjust enrichment claim, including an enrichment and impoverishment. To begin, Plaintiffs received the agreed-upon university education in return for the tuition amount that Plaintiffs agreed to pay. *Brooks v. Valley Nat'l Bank*, 113 Ariz. 169, 174 (1976) ("A person is not entitled to compensation on the grounds of unjust enrichment if he receives from the other that which

it was agreed between them the other should give in return." (citing Restatement of Restitution § 107, cmt. 1(a))). Moreover, Section 1623 does not create or confer any educational benefits on non-resident students to receive postsecondary educational benefits. *Day*, 500 F.3d at 1139. Furthermore, ABOR's tuition rates were justified by Arizona law, which bars non-resident students from receiving in-state tuition. A.R.S. § 15-1802(A). The superior court properly dismissed the unjust enrichment claim.

## CONCLUSION

**¶29** We affirm the superior court's dismissal of Plaintiffs' claims under Rule 12(b)(6). And because Plaintiffs have not prevailed on appeal, we decline their request for attorney's fees.



AMY M. WOOD • Clerk of the Court
FILED: AA