# IN THE SUPREME COURT OF THE STATE OF NEVADA

LAURA FITZ,
Appellant,
vs.
JEANETTE E. MAISS, INDIVIDUALLY
AND AS SUCCESSOR TRUSTEE OF
THE ROBERT E. FITZ 2002 TRUST
DATED JUNE 25, 2002,
Respondent.

No. 80888

FILED

OCT 18 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order granting summary judgment in a contract matter. Second Judicial District Court, Washoe County; Egan K. Walker, Judge. The contract at issue is a settlement agreement (the agreement) which appellant, Laura Fitz, and respondent, Jeanette Maiss, entered into with regard to the division outside probate of the estate of Fitz's late-husband, Maiss's father, Robert E. Fitz, following his death. Central to this appeal are corresponding provisions of the agreement providing that Fitz shall receive "$20,000 from the Department of Energy settlement" (DOE settlement) and that Maiss shall receive "[t]he remainder of the [DOE settlement] after Fitz receives $20,000." Fitz applied for and obtained certain survivor benefits under Parts B and E of Energy Employees Occupational Illness Compensation Program Act of 2000, 42 U.S.C. §§ 7384 to 7385s-16 (2018), (the act) with the Division of Energy Employees Occupational Illness Compensation Program (the agency) based on Robert's employment with the agency and related illness. Maiss sued Fitz for disbursement of the funds in accordance with those DOE settlement provisions recited above. The district court granted summary judgment in Maiss's favor.

21-29803

As a threshold matter, though the district court's order does suggest in passing that Fitz is promissorily estopped from refusing to pay Maiss according to the agreement based on her acceptance of benefits under its terms, this is not the order's foundation. The district court's brief and cryptic reference to this potential theory of recovery is dictum—because the parties do not dispute that the overall agreement itself was enforceable, no separate claim for promissory estoppel could lie. *See Vancheri v. GNLV Corp.*, 105 Nev. 417, 421, 777 P.2d 366, 369 (1989) (noting that promissory estoppel is a theory of recovery where the requirement of consideration for formal contract would otherwise be lacking). Instead, the determinative question is what the parties meant when they agreed that $20,000 of the "DOE settlement" would go to Fitz, with "[t]he remainder" to Maiss. *MMAWC, LLC v. Zion Wood Obi Wan Tr.*, 135 Nev. 275, 279, 448 P.3d 568, 572 (2019) (noting that in interpreting a contract the court "seek[s] to discern the intent of the parties . . . from the four corners of the contract" (internal quotations omitted)). And the district court held that the references to the "DOE settlement" and its "remainder" unambiguously referred to those survivor benefits payable under the act noted above; an interpretation subject to de novo review. *Am. First Fed. Credit Union v. Soro*, 131 Nev. 737, 739, 359 P.3d 105, 106 (2015) (noting that "this court reviews contract issues de novo, looking to the language of the agreement and the surrounding circumstance" (internal quotations omitted)); *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (noting that "[t]his court reviews a district court's grant of summary judgment de novo").

Broadly speaking, Parts B and E of the act compensate covered former Department of Energy workers for covered illnesses—including, as relevant here, the lymphoma that affected Robert—stemming from their

employment. *See* 42 U.S.C. §§ 7384(a)(5), (8), 7384(b)(1), 7384d(a). Part B sets an automatic baseline award of $150,000, while Part E awards are somewhat more variable. Robert applied for and the agency approved him to receive benefits under the act, but because Robert died before he could approve, sign, and return the agency's decision, the agency administratively closed his claim without paying them. On Robert's death, however, the right to recover under the act shifted to his surviving spouse—Fitz—who could and did independently apply for the benefits in his place. *See* 42 U.S.C. §§ 7384s(e)(1)(A), 7385s-3(c)(1). As an adult surviving child, Maiss could not have recovered benefits unless Fitz predeceased her, and then only those available under Part B. 42 U.S.C. §§ 7384s(e)(1)(B), 7385s-3(c).

Fitz and Maiss entered into the agreement after Robert died. As noted, at the time they did so, the agency had qualified Robert for benefits but administratively closed his individual claim. This sequence of events imbued the "DOE settlement" with unambiguous meaning—the "DOE settlement" referred to the benefits payable under the act for his qualifying illness which, by operation of law, passed to his statutorily defined "survivor," Fitz, as the district court correctly held. And, subsequent to the agreement but before this dispute arose, the parties conducted themselves consistent with this reading—the parties proceeded to distribute Robert's estate outside probate and Fitz accepted certain immediate rights in real and personal property in accordance with the agreement's terms, and applied for the pre-established benefits under the act on a form provided by Maiss's counsel and at Maiss's urging. *Cf. Ringle v. Bruton*, 120 Nev. 82, 93, 86 P.3d 1032, 1039 (2004) (noting that the subsequent conduct of parties to a contract may inform its interpretation).

In her declaration in opposition to summary judgment, Fitz self-servingly asserts that "it has always been [her] understanding and belief that [Maiss and she] agreed to abide by whatever the [agency] decided" with regard to who would receive the survivor benefits. But this is classic parol evidence and in direct contradiction of the written agreement, which plainly allocates the first $20,000 of the DOE settlement to Fitz with "[t]he remainder" to Maiss. *M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913-14, 193 P.3d 536, 544 (2008) (noting that "parol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict . . . written instruments which dispose of property") (internal quotations omitted). The agreement contains a standard integration clause. And Fitz's proffer of extrinsic evidence is not admissible to create an ambiguity where there otherwise is none. *Khan v. Bakhsh*, 129 Nev. 554, 558, 306 P.3d 411, 413 (2013) (noting that "[t]he parol evidence rule generally bars extrinsic evidence regarding prior or contemporaneous agreements that are contrary to the terms of an integrated contract").

In any case, even if the phrase "DOE settlement" was ambiguous so as to render Fitz's declaration admissible, there is no competent evidence to support a reading other than that proffered above. To give the clause the "meaning" Fitz's declaration puts forth would, in fact, be to deny it any. *Bielar v. Washoe Health Sys., Inc.*, 129 Nev. 459, 465, 306 P.3d 360, 364 (2013) ("A court should not interpret a contract so as to make meaningless its provisions." (internal quotations omitted)). And while Fitz appears to argue in her reply brief that "DOE settlement" referred to a claim by Robert for medical benefits separate and apart from her survivor benefits, she does not develop this point or support it with cites to the record

on appeal. *Allianz Ins. Co. v. Gagnon*, 109 Nev. 990, 997, 860 P.2d 720, 725 (1993) (noting that "[t]his court need not consider the contentions of an appellant where the appellant's opening brief fails to cite to the record on appeal"). Nor was there any other record support for the proposition—instead all relevant compensation rights seem to pass to Fitz *outside probate, see* 42 U.S.C. §§ 7384s(e)(1)(A), 7385s-3(c)(1), the exact context in which the parties negotiated the agreement in question. *See Am. First Fed. Credit Union*, 131 Nev. at 739, 359 P.3d at 106 (noting that the language of an agreement is interpreted in light of surrounding circumstance).

Indeed, Fitz's own opening brief seemed to reject that there were any benefits payable to Robert once he died, and instead gave "DOE settlement" an entirely different interpretation, implying the phrase referred solely to the automatic benefits awarded under Part B, not those under Part E. But benefits under Part E flow as a matter of course from the same eligibility determination as those under Part B, coupled with the facts of Robert's death and Fitz surviving him as a covered spouse. *See* 42 U.S.C. §§ 7384s(a)(1), (e)(2); 42 U.S.C. § 7385s-1(2).[1] And to the extent Fitz

---

[1]In her reply, Fitz offers the alternative argument that the "DOE settlement" only refers to the Part B benefits, not those available under Part E, since Part E benefits were only available to Fitz, not to Maiss, even if Fitz had predeceased Maiss. 42 U.S.C. § 7385s-3(c), (d) (providing that Part E benefits "shall be paid only" to a surviving spouse or children who are either minors or dependent full-time students). Fitz did not cogently present this argument in the opening brief and thus it is not a basis for reversal. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330, n.38 130 P.3d 1280, 1288, n.38 (2006). The argument is also unpersuasive because, if "DOE settlement" only referred to Part B benefits—which are automatically set at $150,000—and did not include the more variable Part E benefits, there would have been no reason to open-endedly allocate "[t]he

SUPREME COURT
OF
NEVADA

(O) 1947A

miscalculated the survivor benefits that would be in play based on her mistaken belief in a relevant distinction between Parts B and E, her ignorance of the law does not excuse her from the legal effect of her contractual obligations. *Anderson v. Sanchez*, 132 Nev. 357, 361-62, 373 P.3d 860, 863 (2016) (citing *Janusz v. Gilliam*, 947 A.2d 560, 567 (Md. 2008) (holding that a mutual mistake of law was not grounds to rescind a property settlement agreement particularly where both parties were represented by counsel during the negotiations and were on equal footing to know or learn of the relevant law)).

The remaining issues Fitz raises on appeal are also unavailing. Even assuming Fitz is correct that she could not assign the survivor claim itself, a meaningful legal distinction exists between her assigning the rights to the claim and assigning the proceeds therefrom; the latter being plainly permissible. *See Achrem v. Expressway Plaza Ltd. P'ship*, 112 Nev. 737, 741, 917 P.2d 447, 449 (1996). And, because Fitz is in default under the agreement, which provides that "the defaulting party shall be liable and hereby agrees to pay all legal expenses," the district court did not abuse its discretion in awarding attorney fees and costs to Maiss. *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 80, 319 P.3d 606, 615 (2014) (noting that an award of attorney fees and costs is reviewed for an abuse of discretion); *Albios v. Horizon Cmtys., Inc.*, 122 Nev. 409, 417, 132 P.3d 1022, 1028 (2006) (noting that a district court may only award attorney fees pursuant to a statute, rule, or contract). This is so even despite what Fitz claims is Maiss's

---

remainder" of the "DOE settlement" after Fitz's $20,000 to Maiss, rather than the $130,000 balance remaining of the Part B benefit.

supposed breach of the agreement's confidentiality provision—Fitz failed to raise this affirmative defense in the court below. *See Elliot v. Resnick*, 114 Nev. 25, 30, 952 P.2d 961, 964 ("If affirmative defenses are not pleaded or tried by consent, they are waived.").  We therefore

ORDER the judgment of the district court AFFIRMED.

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

cc:  Hon. Egan K. Walker, District Judge
Laurie A. Yott, Settlement Judge
McCormick, Barstow, Sheppard, Wayte & Carruth, LLP/Reno
McDonald Carano LLP/Reno
Washoe District Court Clerk